**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JAMIE MCGILL,**

                                        **Plaintiff,**

        **vs.**                                            **5:13-CV-601**
                                                        **(LEK/CFH)**

**CAROLYN W. COLVIN,**
**Commissioner of Social Security,**

                                        **Defendant.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

The Stanley Law Offices                   Jaya Shurtliff, Esq.
215 Burnet Avenue
Syracuse, New York 13203
_Attorney for Plaintiff_

Social Security Administration            Sixtina Fernandez, Esq.
Office of General Counsel                 Special Asst. U.S. Attorney
26 Federal Plaza, Rm. 3904
New York, NY 10278
_Attorney for Defendant_

**Christian F. Hummel, U.S. Magistrate Judge:**

### REPORT-RECOMMENDATION AND ORDER[1]

### INTRODUCTION

        Plaintiff Jamie McGill, brings the above-captioned action pursuant to 42 U.S.C. § 405(g)

seeking a review of the decision from the Commissioner of Social Security ("Commissioner") that

denied her application for disability insurance benefits ("DIB").

_____

        [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)
and N.D.N.Y.L.R. 72.3(d).

**PROCEDURAL BACKGROUND**

On September 28, 2009, plaintiff protectively filed an application for DIB benefits. (T. 148-153)[2]. Plaintiff was 30 years old at the time of the application with prior work experience as an optical assistant and "seasonal help/counter help" in the rental car and retail industry. (T. 165). Plaintiff was a member of the U.S. Military from July 1998 until June 1999. (T. 150). Plaintiff claimed that she became unable to work beginning on May 4, 2010 due to post traumatic stress disorder; borderline personality disorder; asthma; herniated disc; nerve damage, high blood pressure and radiculitis. (T. 177).

On February 16, 2011, plaintiff's application was denied and plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which was held on March 5, 2012. (T. 57, 10-24). Plaintiff appeared with an attorney. On March 30, 2012, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 10-24). The Appeals Council denied plaintiff's review on March 26, 2013, making the ALJ's decision the final determination of the Commissioner. (T. 1-5). This action followed.

**DISCUSSION**

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

---

[2]"(T.)" refers to pages of the Administrative Transcript, Dkt. No. 6.

"In essence, if the Commissioner determines (1) that the claimant is
not working, (2) that he has a 'severe impairment,' (3) that the
impairment is not one [listed in Appendix 1 of the regulations] that
conclusively requires a determination of disability, and (4) that the
claimant is not capable of continuing in his prior type of work, the
Commissioner must find him disabled if (5) there is not another type
of work the claimant can do." The claimant bears the burden of proof
on the first four steps, while the Social Security Administration bears
the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal

citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the

factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set

aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d

72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity

since May 4, 2010. (T. 12). At step two, the ALJ concluded that plaintiff suffered from the

following severe impairments: asthma, degenerative disc disease with related symptoms; post-

traumatic stress disorder; depression and borderline personality disorder. (T. 12). At step three,

the ALJ determined that plaintiff does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments in the Listing of Impairments. The ALJ

then found the plaintiff had the Residual Functional Capacity ("RFC") to "perform sedentary

work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders ropes or

scaffolds and can only occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs.

With regards to her non-dominant hand, she can only frequently handle, finger or grasp and occasionally push and pull. She is to avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. Furthermore, the claimant is limited to unskilled work, i.e. , simple routine repetitive tasks, involving only simple work related decisions with few, if any, work place changes, and only occasional interaction with supervisors, coworkers and the public". (T. 14). At step four, the ALJ concluded that plaintiff was not capable of performing any past relevant work. (T. 22). The ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform. Based upon the vocational expert's testimony, the ALJ concluded at step five, that plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy such as work as surveillance system/alarm monitor, addresser/mail sort clerk and clerical sorter. (T. 23-24). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 24).

In seeking federal judicial review of the Commissioner's decision, plaintiff alleges that: (1) the ALJ failed to comply with the Regulations relating to the medical opinion evidence; (2) the ALJ's credibility analysis is flawed; and (3) the vocational expert was presented with an incomplete hypothetical due to the ALJ's errors in evaluating the RFC and plaintiff's subjective complaints. (Dkt. No. 8).

## I.  MEDICAL OPINION EVIDENCE

The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85  86 (S.D.N.Y.1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988)). Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78  79; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993).  When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2). The Regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schaal v. Apfel*, 134 F.3d 501, 503  504 (2d Cir.1998).

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  "Similarly, treating source opinion can be rejected for lack of underlying expertise, or when it is brief, conclusory and unsupported by clinical findings, or when it appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy is reasonably suspected." *Orts v. Astrue*, 2012 WL 6803588, at *5 (N.D.N.Y. 2012) (citations omitted). "While the final responsibility for deciding issues relating to disability is reserved to the

Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence. *See Martin v. Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009).

Pursuant to 20 C.F.R. § 404.1527(1), every medical opinion, regardless of its source, must be evaluated. However, the treating physician rule does not apply to consulting doctors. *See Jones v. Shalala*, 900 F.Supp. 663, 669 (S.D.N.Y. 1995); *see also Limpert v. Apfel*, 1998 WL 812569, at *6 (E.D.N.Y.1998). An ALJ may "rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability." *Williams v. Astrue*, 2011 WL 831426, at *11 (N.D.N.Y.2011) (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(C), 404.1527(f)(2), 416.912(b)(6), 416.913, and 416.927(f)(2). The weight afforded a consultative opinion depends upon the thoroughness of the underlying medical examination and the degree of light the opinion sheds on the conflicting assessment of the treating physician. *Gray v. Astrue*, 2009 WL 790942, at *10  11 (N.D.N.Y.2009) (citation omitted). While an ALJ must give "good reasons" if he does not give a treating physician's opinion sufficient weight, there is no similar requirement for consulting physicians. *Id*. (citing *Limpert*, 1998 WL 812569, at *6). If an ALJ relies upon a non-examining reviewer's opinion, that opinion must be supported by the bulk of the record. *See* Social Security Ruling ("SSR") 96  6p, 1996 WL374180, *2 (July 1996); *see also Rocchio v. Astrue*, 2010 WL 5563842, at *14 (S.D.N.Y. 2010).

**A.    Tanya Bowen, Ph.D.**

On October 28, 2010, plaintiff appeared for an initial consultation with Tanya Bowen, Ph.D., a psychologist with the Veterans' Administration Medical Center. Plaintiff complained of pain due to an automobile accident and reported a history of sexual abuse both as a child and in

the military. Upon examination, Dr. Bowen noted that plaintiff was neat and well-groomed. She arrived early for her appointment and her speech was coherent, spontaneous and normal. Plaintiff's judgment was fair and her thoughts were lucid. Plaintiff denied experiencing any homicidal or suicidal ideals. Plaintiff walked with a limp and could not shake the doctor's hand. Plaintiff described her pain as "7/10". Dr. Bowen diagnosed plaintiff with PTSD and bipolar disorder. (T. 844 - 845).

On November 4, 2010, plaintiff appeared for a follow up visit. Plaintiff was "guarded" and more agitated but the results of the doctor's examination were unchanged. Dr. Bowen opined that plaintiff was a good candidate for long term therapy due to her complex PTSD. On November 18, 2010, plaintiff returned and appeared depressed and anxious about her financial situation. Plaintiff stated that insurance would no longer compensate her for medical treatment as a result of her motor vehicle accident and that she was unemployed. (T. 842). Plaintiff failed to show for an appointment on November 23, 2010 and indicated that she was doing, "much better". (T. 839). On November 29, 2010, plaintiff appeared and was noted as being "more upbeat".

On December 21, 2010, Dr. Bowen prepared a "PCT Treatment Plan". The doctor noted that plaintiff, a 30 year old veteran of the Air Force, had a history of trauma related to work on a relief effort in Mississippi after a hurricane and a history of sexual and physical abuse. Plaintiff claimed that her personality disorder interfered with her ability to succeed in the military. Plaintiff attempted suicide by cutting her wrists and was discharged from the military. (T. 836). Plaintiff also reported a history of physical abuse by her mother, sexual abuse by her grandfather, strained relationships with family members and claimed that her sisters were involved in prostitution and drugs. Plaintiff allegedly lead a solitary life after being left by her fiancé for another woman in their church group. Plaintiff was diagnosed with PTSD and bipolar disorder

and was referred by Jennifer Dovin, LCSW. Plaintiff had difficulties with trust and was "hypervigilant". The doctor summarized her prior examinations indicating that plaintiff appeared on time, neat and appropriately dressed. Plaintiff discussed her constant pain as a result of a motor vehicle accident where she sustained injuries that caused her to drag her foot and rendered her unable to engage in physical activities. Plaintiff reported limited sources of income and stated that her long term disability had lapsed. The doctor suggested that plaintiff appear for bi-weekly individual psychotherapy and consider vocational rehabilitation. (T. 828-839).

On December 22, 2010, plaintiff was seen for a follow up and was in "remarkably good spirits despite the challenges of not being able to work or get PT services". (T. 828). Plaintiff was "insightful" when discussing her difficult family situation and "friends from Karaoke". Plaintiff had a "positive outlook" and felt "fortunate" for her friends.

On June 2, 2011, plaintiff returned for a follow up visit. Dr. Bowen noted that she had not seen plaintiff since December 2010 due to plaintiff's cancellations and failure to show for visits. The doctor also noted that her schedule required her to change some of plaintiff's appointments and plaintiff viewed this as "rejection". (T. 937). Upon examination, plaintiff's mental status was unchanged and her gait was much better as plaintiff admitted to exercising at home. Plaintiff was dating and had friends but continued to relate dysfunction in her family relationships.

On March 2, 2012, Dr. Bowen completed a Medical Source Statement ("MSS"). The doctor noted that she had seven sessions with plaintiff with "long breaks bet 2/11 & 6/11 and again from 6/11 - 2/12". (T. 1017). Dr. Bowen diagnosed plaintiff with PTSD, borderline personality disorder and problems with primary support and relationships. In her opinion, plaintiff also experienced, "occupational problems" and "economic problems". Dr. Bowen noted that plaintiff was "seriously limited but not precluded" from the following: sustaining an ordinary

routine without special supervision; working in proximity with others without being distracted; completing a normal workday or workweek without interruptions; accepting instruction and responding to criticism from supervisors; responding appropriately to changes in a routine work setting. In addition, the doctor opined that plaintiff had "no useful function" and was unable to interact with the general public or to maintain socially appropriate behavior.

The ALJ discussed Dr. Bowen's March 2012 assessment and assigned "little weight" to her opinions:

> While Dr. Bowen is a treating health care provider, she went for an entire year with seeing the claimant only once. Her medical records, discussed above indicate mostly normal mental status examinations and no more than moderately limiting mental impairments. As such, her opinions from this medical source statement are unsupported by her own treatment records and are found to be based on the claimant's subjective allegations. Thus, pursuant to 20 CFR 404.1527, Dr. Bowen's opinions have been granted little weight. (T. 22).

Plaintiff argues that the ALJ failed to comply with the "treating physician rule" with respect to opinions expressed by Tanya Bowen, Ph.D. Specifically, plaintiff argues that the ALJ should have assigned controlling or significant weight to Dr. Bowen's opinions because her conclusions are consistent with the opinions expressed by Dr. Shapiro, a consultative examiner.

In the MSS, the doctor opines that plaintiff would be unable to get along with coworkers or peers. However, these severe restrictions are not supported by the doctor's own treatment notes. During her sessions, plaintiff repeatedly discussed her "friendships" with "insightful" reasoning and "a positive outlook". When plaintiff discussed her friends "from Karaoke", she was upbeat and stated that she was very "fortunate" to have those relationships. Indeed, plaintiff told the doctor, in June 2011, that she was dating and that she spent Thanksgiving with her family. Dr. Bowen's treatment notes and plans do not support her opinion that plaintiff suffers from

extreme restrictions in social relationships. With respect to her opinion that plaintiff could not behave "socially appropriately" or sustain a normal routine or accept instructions, Dr. Bowen's objective examinations belie this conclusion. Throughout her treatment, the objective findings were largely unremarkable. The doctor consistently found plaintiff's thoughts and speech to be normal and lucid. Plaintiff appeared for her visits on time, groomed and appropriately dressed and gave no indication that she could not follow the doctor's instructions. Moreover, the doctor never described plaintiff as uncooperative in any of her reports. The opinion that plaintiff has "no useful function" and is "unable" to interact with the general public or maintain socially appropriate behavior is similarly unsupported by Dr. Bowen's records and suspect due to her sporadic treatment and lack of expertise. *See Terminello v. Astrue*, 2009 WL 2365235, at *6  7 (S.D.N.Y. 2009) (affirming ALJ's refusal to give controlling weight to treating physician's opinion that claimant had "no useful ability to work" because of "stress and depression" where treating physician was not a psychiatrist and claimant had "not seen a psychiatrist for depression"). Courts generally do not take an ALJ's conclusion that a treating physician's own treatment notes contradict the record as a whole at face value; rather, they require the mentioning of specific findings that would support such a conclusion. *Pidkaminy v. Astrue*, 919 F.Supp.2d 237, 244 (N.D.N.Y. 2013). In this matter, the ALJ provided that explanation and the records support that conclusion.

In addition, Dr. Bowen's opinion is not based upon a contemporaneous or recent examination of plaintiff. Dr. Bowen indicates that she saw plaintiff in February 2012 however, the record does not contain any treatment notes from plaintiff's alleged visit in February 2012. Moreover, Dr. Bowen's own treatment records indicate that plaintiff was not treated between December 2010 and June 2011. Therefore, the doctor's reference to treatment in February 2011 is

unsupported. Based upon the record, Dr. Bowen's opinion was rendered nine months after

plaintiff's last examination with Dr. Bowen. "Although deference should be accorded to [the

treating physicians' opinion], the unexplained gap between [the] most recent examination of

plaintiff and the preparation of the [ ] report, suggest[s] that such deference would not be

appropriate." *Batchelder v. Astrue*, 2011 WL 6739511, at *9 (N.D.N.Y. 2011).

Plaintiff argues that Dr. Bowen's MSS should have been assigned more significant weight

because it is consistent with the conclusions of the consultative examiner, Jeanne A. Shapiro,

Ph.D. Even assuming the opinions are consistent, the argument is tangential as the ALJ did not

assign any greater weight to Dr. Shapiro's opinion than to Dr. Bowen's conclusions. Dr. Shapiro

found:

> Vocationally, the claimant may have difficulty adequately
> understanding and following some instructions and directions as well
> as completing some tasks due to memory and concentration deficits.
> She may have difficulty interacting appropriately with others due to
> social withdrawal and inappropriate behavior. Attending work or
> maintaining a schedule may be difficult due to lack of motivation and
> lethargy. She does not appropriately manage stress. (T. 727).

After reviewing Dr. Shapiro's entire report, it is surprising that the ALJ afforded <u>any</u>

weight to the opinion. The ALJ assigned "minimal weight' to the opinion because, "Dr. Shapiro

prefaces all limitations with 'may be', thus indicating the mere potential of a restriction, limitation

or difficulty". Plaintiff has failed to present any argument or evidence suggesting the ALJ's

assessment of Dr. Shapiro's opinion was erroneous. Despite this omission, the Court has

reviewed Dr. Shapiro's opinion and finds that it is wholly inconsistent with the doctor's report

and thus, does not support plaintiff's argument that Dr. Bowen's opinion is entitled to more

weight. Upon examination, the doctor noted that plaintiff's speech and thought processes were

normal and her attention, concentration and memory skills were "intact". (T. 727). Plaintiff's

intellectual functioning was average and her insight and judgment were fair. The results of the examination do not support Dr. Shapiro's conclusory assertion that plaintiff would have difficulty understanding and following directions due to "memory and concentration deficits". Moreover, based upon plaintiff's subjective complaints, Dr. Shapiro's opinions regarding plaintiff's social skill is discredited. For example, plaintiff told Dr. Shapiro, "[s]ocially, she does not always get along with friends and family". However, later in the examination, plaintiff stated that, "[s]he spends her days doing chores, reading, watch television, socializing with friends, and listening to the radio, and she notes that she enjoys drawing and painting". The severe social restrictions imposed by Dr. Shapiro are not supported by plaintiff's complaints or the examination.

Based upon the record and for the aforementioned reasons, the Court finds that substantial evidence supports the ALJ's decision to assign "little weight" to Dr. Bowen's assessment. The ALJ complied with the Regulations and sufficiently explained his reasoning for failing to assign controlling weight to Dr. Bowen's opinions. The Court finds no basis for remand on this issue.

**B.      T. Harding, Ph.D.**

Plaintiff argues that the ALJ committed reversible error when he assigned "significant weight" to opinions expressed by Dr. Harding, a non-examining physician. (Dkt. No. 8, p. 14-15). Plaintiff claims that Dr. Harding was a non-examining, consultative physician who improperly reviewed only a portion of the medical record prior to formulating his opinion. The Commissioner disagrees and argues that Dr. Harding reviewed the VA records from 2008 through November 2010.

On February 16, 2011, Dr. Harding completed a Mental Residual Functional Capacity Assessment. Dr. Harding reviewed plaintiff's medical records from the V.A. and her activities of daily living. Dr. Harding noted that plaintiff was moderately limited in her ability to carry out

detailed instructions; sustain an ordinary routine and ability to work in proximity to others without distraction. (T. 756). Socially, Dr. Harding opined that plaintiff was moderately limited in her ability to interact with the general public and co-workers and to accept instructions/criticism from her supervisors. Dr. Harding concluded that plaintiff was moderately limited in her ability to respond to changes in the work setting and found that plaintiff did not suffer from any marked limitations in any areas.

The ALJ discussed Dr. Harding's opinion:

> These opinions are based on the claimant's treatment records, self-reporting and the findings of Dr. Shapiro. The undersigned finds that Dr. Harding's opinion is consistent with and well supported by the substantive evidence of record, including the claimant's treatment records that offer GAF scores from the mid-50s up, indicating mild to moderate mental symptoms. As such, pursuant to 20 CFR 404.1527, Dr. Harding's findings have been granted significant weight. (T. 22).

Plaintiff claims that Dr. Harding's findings are unreliable because his opinion was based on "a portion of the current record, including the consultative examination of Dr. Shapiro but not that of Dr. Broward". The Court has reviewed the briefs, ALJ's decision and record, and finds no evidence of any treatment by "Dr. Broward". The Court assumes that this is a typographical error and that plaintiff intended to argue that Dr. Harding's opinion was issued prior to Dr. Bowen's MSS. Nevertheless, the Court is unpersuaded by plaintiff's conclusory, unsupported argument. Plaintiff summarily argues that Dr. Harding failed to consider Dr. Bowen's records but fails to articulate what portion of Dr. Bowen's opinion/treatment contradicts Dr. Harding's opinion. In addition, the record contains only one record of an examination by Dr. Bowen after Dr. Harding issued his opinion (February 2011). That examination was unremarkable and thus, unlikely to have impacted Dr. Harding's assessment. Dr. Bowen's opinion was issued one year after Dr. Harding's assessment, but as noted *supra*, that opinion is unsupported by substantial evidence.

Plaintiff argues that her GAF scores may not be used to translate a functional assessment.[3] While plaintiff is correct, the ALJ did not address the GAF scores for that purpose. Rather, the ALJ noted that "the substantive evidence of record, including the claimants treatment records that offer GAF scores" is consistent with Dr. Harding's assessment. Indeed, Dr. Harding's opinion is consistent with Dr. Bowen's treatment records and Dr. Shapiro's report. Accordingly, it follows that the ALJ's assignment of weight and assessment to Dr. Harding's Mental RFC are supported by substantial evidence, and, thus, affirmed. *See Sierra v. Astrue*, 2012 WL 4490957, at *6 (N.D.N.Y. 2012) (the opinion of state agency consultants may constitute substantial evidence to support an ALJ's determination, provided that there is other supporting evidence in the record).

## C.    Dr. Mohammad Toor

Plaintiff argues that the ALJ erroneously assigned only "minimal weight" to the opinions expressed by consultative examiner, Muhammad Toor, M.D. On January 28, 2011, plaintiff appeared for an independent orthopedic examination with Dr. Toor at the request of the agency. (T. 730). Plaintiff provided a history of being involved in a motor vehicle accident and claimed that she was still participating in physical therapy twice per week for the injuries she sustained in the accident. Plaintiff stated that she was unable to have injections due to a lack of insurance. Plaintiff complained of constant pain in her right side from her neck to her foot and numbness in her right arm and leg. With respect to activities, plaintiff claimed that she was able to cook daily, clean once a week, do laundry and shop every two weeks. Plaintiff socialized with her friends and liked to draw and paint. Upon examination, the doctor noted that plaintiff was in no acute distress

---

[3] The Global Assessment of Functioning Scale (GAF) is a 100 point scale, and 41–50 indicates "serious symptoms," 51–60 indicates "moderate symptoms," and 61–70 indicates "some mild symptoms." DSM–IV–TR at 32–34.

but exhibited an abnormal gait and declined to walk on her heels and toes. Plaintiff was able to squat 1/4 of the way down and had some difficulty on the examination table. Plaintiff's grip strength on the right was 5/5 and 4/5 on the left but dexterity was intact. Plaintiff exhibited a decreased range of motion in her cervical, lumbar and thoracic spine. Dr. Toor diagnosed plaintiff with degenerative disc disease in her cervical, lumbar and thoracic spine. Dr. Toor did not review or order any diagnostic testing. Dr. Toor issued an MSS stating that plaintiff's ability to sit, stand for long periods of time, climb, push, pull, or carry heavy objects would be markedly limited due to her medical conditions. (T. 734).

The ALJ discussed Dr. Toor's examination and concluded:

> While the undersigned finds that the evidence as a whole indicates restrictions in these functional areas, as evidence by the less than sedentary residual function capacity assigned above, Dr. Toor's own objective findings and the diagnostic findings throughout the record do not support marked limitations. Furthermore, the claimant's ability to travel to North Carolina, attempt to change a tire, recycling of metal and applying for a job, undermine Dr. Toor's opinion. The undersigned finds that Dr. Toor's opinion with respect to these exertional activities is based on the claimant's subjective allegations, not the objective medical evidence. Thus, pursuant to 20 CFR 404.1527, his opinion has been granted little weight. His findings related to respiratory irritants are somewhat consistent with the record as a whole and have been granted moderate weight. (T. 20).

While the ALJ was compelled to consider Dr. Toor opinions, he was not obligated to assign the opinion any significant weight. Dr. Toor examined plaintiff only once and his opinion regarding plaintiff's ability to sit, stand and climb lacks the requisite specificity and precludes the ALJ from drawing the conclusions or inferences plaintiff seeks. *See Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000) (holding that consulting physicians opinion that the plaintiff's impairment was "lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild" lacked specificity and did not permit the ALJ to make the necessary inference that the plaintiff could

perform the exertional requirements of sedentary work); *see also Karabinas v. Colvin,* 2014 WL

1600455, at *11 (W.D.N.Y. 2014) (citations omitted) ("[w]hile the opinions of treating or

consulting physicians need not be reduced to any particular formula, the consultative examiner's

use of the term "moderate", without additional information, does not permit the ALJ, to make the

necessary inference that [plaintiff] can perform the exertional requirements").  Dr. Toor's vague

statements do not provide the ALJ with sufficient information to formulate an RFC that is

supported by substantial evidence.  Plaintiff claims that Dr. Toor's own objective findings support

his conclusion.  Even assuming that to be true, the consistency between the doctor's report and his

analysis, without more, does not require the ALJ to assign significant weight to his opinion.

Indeed, plaintiff has not cited to any portion of the remaining medical evidence that supports Dr.

Toor's restrictive analysis.  Further, Dr. Toor's extreme restrictions are not supported by the

extensive diagnostic testing documented in the record.  For example, on May 4, 2010, plaintiff

had a CT and x-ray taken of her cervical spine.  The CT revealed no evidence of fracture with a

mild bulge at C5-6 and C6-7, "minimally indenting the thecal sac".  The x-ray was unremarkable.

In June 2010 and July 2010, MRI films were taken of plaintiff's cervical, thoracic and lumbar

spine.  The cervical films revealed "mild multilevel disc bulging without cord compression" and

the lumbar films appeared to depict a disc protrusion at T10-11 however, it was "not optimally

seen". (T. 253-57).  An EMG taken in July 2010, revealed mild, right C6 radiculopathy. (T. 780).

The ALJ discussed the aforementioned testing, and additional films and an ultrasound, and

concluded that the results of the diagnostic testing do not support Dr. Toor's restrictive analysis

and opinion that plaintiff has "marked" limitations in her ability to perform work related

functions.  *See Antoniou v. Astrue*, 2011 WL 4529657, at *15 (E.D.N.Y. 2011) (although the

record contained the doctor's "progress notes," which summarized the plaintiff's complaints,

medications, and vital signs, the notes did not mention any clinical findings or diagnostic techniques that the doctor used to assess plaintiff's ability to sit, stand, or walk, carry items, or rotate his neck).  Plaintiff has not cited to any medical record or report of any diagnostic imaging that supports Dr. Toor's analysis.  Thus, the ALJ's decision to assign minimal weight to the doctor's opinion is not reversible error.

## II.     CREDIBILITY

Plaintiff claims that the ALJ failed to apply the appropriate legal standards in assessing her credibility.  "The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence.  *See* SSR 96 7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their

consistency, both internally and with other information in the case record. SSR 96 7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period. *Howe Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007). The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82 59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4 *8 (S.D.N.Y. 2003). The ALJ determines issues of credibility and great deference is given his judgment. *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419, n. 6 (S.D.N.Y. 1995).

On the issue of credibility, the ALJ discussed plaintiff's hearing testimony, medication, activities of daily living and ability to work and found plaintiff "not credible" because her subjective complaints were "unsupported by the objective medical evidence and inconsistent with the above residual functional capacity assessment". (T. 15-16). The ALJ specifically referenced plaintiff's ability to live alone, maintain a house, cook, do laundry, drive and food shop. (T. 15). The ALJ also noted that plaintiff's medical records included notations that plaintiff worked at a

horse farm after the accident and changed a tire in August 2011. The ALJ found "serious credibility concerns" due to plaintiff's ability to travel. (T. 15). To wit, plaintiff testified that she traveled to North Carolina with her father. The ALJ noted, "[d]espite plaintiff's allegations that she had to lie down much of her four-day trip because of her back, the undersigned finds the claimant's ability to travel such a distance is indicative of an ability to engage in many sedentary exertional activities". (T. 15). The ALJ discussed plaintiff's medications, including the fact that she did not have injections due to insurance issues. The ALJ also noted that plaintiff's compliance with recommended medical treatment "ceased in the beginning of 2011". The ALJ concluded that plaintiff engaged in activities "beyond the limitations that she has alleged". (T. 22).

Plaintiff takes issue with the credibility analysis arguing that the ALJ improperly decided plaintiff's RFC prior to assessing her credibility and erroneously found her "not credible" because her statements were inconsistent with the RFC finding. It is well settled that, "[i]t is not logical to decide a claimant's RFC prior to assessing her credibility". *Melton v. Colvin,* 2014 WL 1686827, at *13 (W.D.N.Y. 2014) (citation omitted). However, the cases cited in plaintiff's brief involve instances where the ALJ conducted a cursory review of plaintiff's subjective complaints only to dismiss the allegations as "not credible" citing to the RFC assessment. *See Ubiles v. Astrue*, 2012 WL 2572772, at *12 (W.D.N.Y. 2012) (the ALJ erred by measuring the plaintiff's credibility only by assessing the consistency of her statements with the ALJ's own RFC finding, instead of evaluating all of the required factors bearing on the plaintiff's credibility prior to deciding the plaintiff's RFC). Here, the ALJ's ill-chosen language implies that he first determined the RFC and then formulated the credibility analysis. However, the entire credibility analysis must be read in context to determine whether the ALJ complied with the Regulations. *See Moore v. Comm'r of*

*Soc. Sec.*, 2014 WL 630589, at *18 (S.D.N.Y. 2014) ("[r]ead in context,[ ], th[e] statement does not indicate that the RFC assessment was made without regard to [the plaintiff's] subjective complaints); *see also Harris v. Astrue,* 2012 WL 995269, at *3 (S.D.N.Y. 2012) (the ALJ clearly articulated that the basis for his adverse credibility finding was the numerous inconsistencies between the plaintiff's claims and the record). In this instance, the ALJ's credibility analysis is two-pages in length and details plaintiff's testimony with specific references to notations in medical records that were contradictory to her testimony. The ALJ did not simply discount her allegations because they were not compatible with the RFC. The ALJ discussed plaintiff's testimony, as it related to her alleged mental impairments, and noted that plaintiff testified that she has difficulty getting along with co-workers and that she has a "short fuse". However, plaintiff also conceded that she did not take medication for her mental health issues due to religious beliefs. (T. 15). The ALJ also cited to plaintiff's testimony related to her subjective complaints of pain and symptoms, precipitating factors, medications, other treatment and activities of daily living:

> She claims to have 14 damaged discs in her back and is supposed to have injections but her insurance was apparently cut off and she is pending litigation regarding the motor vehicle accident. On a daily basis, the claimant does chores: however , she stated that she does them in little bits at a time. She claims to spend most of each day lying down. The claimant can go food shopping but can only get small amounts of food at a time. For her pain, she currently takes etolac, an anti-inflammatory medication, hydrocodone, which she does not like to take, and a muscle relaxer. (T. 15).

The ALJ conducted a thorough analysis of plaintiff's activities of daily living, medications, intensity of pain and precipitating factors. *See Barry v. Colvin,* 2014 WL 1219191, at *4 (W.D.N.Y. 2014) (citations omitted) ("this Court agrees with the Commissioner that whatever error may be present is largely based on semantics and not cause for reversal"); *see also Moore*,

2014 WL 630589, at *18 (the plaintiff's argument as to the order of the RFC and credibility

assessments is rejected).  Having reviewed the Administrative Transcript in its entirety, the Court

finds that the ALJ correctly applied the standard, enumerated in 20 C.F. R. §

404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility.  Morever, the ALJ did not discount

plaintiff's complaints entirely. In the RFC assessment, the ALJ determined that plaintiff would

need to work in an environment with simple, routine, repetitive tasks and with only occasional

interaction with co-workers. (T. 14).   Taken as a whole, the record supports the ALJ's

determination that plaintiff was not entirely credible. The Court finds that the ALJ employed the

proper legal standards in assessing the credibility of plaintiff's complaints of pain and adequately

specified the reasons for discrediting plaintiff's statements.

## III.    RFC

Based upon the errors in weighing the medical evidence, plaintiff claims that the RFC is

"fraught with legal error".

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the
> individual's maximum remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC assessment must include
> a discussion of the individual's abilities on that basis. A 'regular and continuing basis'
> means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96 8p, Policy Interpretation Ruling

Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96 8p"), 1996

WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R.

§ 404.1545(a).  The ALJ must consider all the relevant evidence, including medical opinions and

facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

As discussed in Parts I and II, *supra*, the ALJ complied with the relevant regulations pertaining to the analysis of medical opinion evidence and plaintiff's subjective complaints. Indeed, despite the lack of substantial evidence supporting Dr. Bowen's assessment, the ALJ nonetheless incorporated the following limitations into the RFC assessment: the claimant is limited to unskilled work, i.e., simple routine repetitive tasks, involving only simple work related decisions with few, if any, work place changes, and only occasional interaction with supervisors, coworkers and the public". (T. 14). Moreover, despite the dearth of evidence supporting plaintiff's alleged physical limitations, the ALJ clearly considered Dr. Toor's conclusions and found that plaintiff could perform only sedentary work and could never climb and only occasionally balance, stoop, kneel, crouch or crawl. In addition, while plaintiff told several physicians that she likes to draw and paint, the ALJ included limitations involving grasping, pushing and pulling.

Based upon the aforementioned, the Court finds that plaintiff's argument, with respect to the RFC, lacks merit.

## IV.    Vocational Expert

Plaintiff claims that based upon the ALJ's errors in formulating the RFC and in the credibility assessment, the hypothetical questions posed to the vocational expert were incomplete.

Under the Social Security Act, the Commissioner bears the burden of proof for the final determination of disability. *Pratt v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996). Generally speaking, if a claimant suffers only from exertional impairments, then the Commissioner may satisfy his

burden by resorting to the applicable grids.[4] *Pratt,* 94 F.3d at 39.  The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience".  *Rosa*, 168 F.3d at 79.  Ordinarily, the ALJ need not consult a vocational expert, and may satisfy this burden "by resorting to the applicable medical vocational guidelines (the grids)".  *Id.* at 78 (citing 20 C.F.R. Pt. 404, Subpt. P, App.2).

The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids.[5] *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). The testimony of a vocational expert that jobs exist in the economy which claimant can obtain and perform is required only when "a claimant's nonexertional impairments significantly diminish his ability to work-over and above any incapacity caused solely from exertional limitations-so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." *Id.*  The use of the phrase "significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity".  *Id.* at 606. Under these circumstances, to satisfy his burden at step five, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."

---

[4] An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying, pushing, and pulling). 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *see also Rodriguez v. Apfel*, 1998 WL 150981, at *10, n. 12 (S.D.N.Y.1998).

[5] A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). Examples of nonexertional limitations are nervousness, inability to concentrate, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. §§ 404.1569a(a), (c)(i), (ii), (iv), (v), 416.969a(a), (c)(i), (ii), (iv), (v); *see also Rodriguez* , 1998 WL 150981, at * 10, n. 12.

*Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 604). Therefore, when considering nonexertional impairments, the ALJ must first consider the question-whether the range of work the plaintiff could perform was so significantly diminished as to require the introduction of vocational testimony. *Samuels v. Barnhart*, 2003 WL 21108321, at *12 (S.D.N.Y.2003) (holding that the regulations require an ALJ to consider the combined effect of a plaintiff's mental and physical limitations on his work capacity before using the grids).

The ALJ should elicit testimony from the expert by posing hypothetical questions. If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. *Melligan v. Chater*, 1996 WL 1015417, at *8 (W.D.N.Y.1996). The "[p]roper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform." *Lugo v. Chater*, 932 F.Supp. 497, 503 (S.D.N.Y.1996). Further, there must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir.1983).

In this case, the ALJ posed questions to the vocational expert, George J. Starosta. The ALJ inquired as to whether jobs existed in the national economy for individuals of plaintiff's age with the restrictions described in the RFC. The vocational expert provided examples of jobs that an individual, with such specifications, could perform such as surveillance system/alarm monitor or an addresser/mail sort clerk. (T. 23).

In support of remand, plaintiff argues that the hypothetical questions were incomplete due to the ALJ's errors in evaluating the RFC and plaintiff's subjective complaints. As discussed

*supra*, the ALJ's RFC analysis was supported by substantial evidence. There is no support for plaintiff's contention that she suffered from additional impairments that were improperly omitted from the RFC. Plaintiff has not set forth any other argument with respect to the ALJ's assessment at step five of the sequential analysis. Thus, the Court concludes that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **AFFIRMED** and plaintiff's motion for judgment on the pleadings (Dkt. No. 8) be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: May 22, 2014
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge